Ed Lane

*v.*

Sumner County et al.

(*Nashville,* December Term, 1956)

Opinion filed February 8, 1957.

W. T. GOODALL, JR., Gallatin, for appellants.

HARSH & KELLY, Gallatin, for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This suit, insofar as it is presented to this Court, was brought to strike two paragraphs from a decree of the Circuit Court of Sumner County entered therein in Sep-

tember 1950. The basic reason for striking these portions of the decree is that they are void as contrary to public policy and therefore should be stricken. The portions of the decree sought to be stricken and elided are:

"It appears to the Court that it was agreed between Petitioner, Ed Lane, Clerk of the Circuit Court of Sumner County, Tennessee, and the Defendant, T. S. Butt, Chairman of the County Court of Sumner County, Tennessee, that said Petitioner will not make a claim for any excess fees accruing from his said office after September 1, 1950, to satisfy deficits in compensation occurring prior to September 1, 1950.

"It is, therefore ordered, adjudged and decreed by the Court that only years subsequent to September 1, 1950, be taken into consideration in determining the matter of excess fees which may be due Sumner County, Tennessee."

The bill was demurred to on various grounds. After certain amendments the Chancellor heard the matter on bill and demurrer and rendered a very comprehensive and well reasoned memorandum opinion ,which is part of the record, sustaining the position of complainant and ordering the above quoted portions of the decree stricken from that decree because they were void and against public policy. We will hereinafter at various times quote parts of this opinion of the Chancellor and in doing so adopt the portions as quoted as the opinion of this Court.

"It is the defendants' position, as stated in brief submitted by their solicitor in this cause, (and by able argument made in open court before us) that the decree of the Circuit Court of Sumner County is a

valid decree and of full force and effect, that the decree of the Circuit Court is a consent decree and the Chancery Court is without power or authority to elide any portion of said decree, and consequently that the complainant is bound by the agreement incorporated in said decree to the effect that he will not make a claim for any excess fees accruing from his office after September 1, 1950, to satisfy deficits in compensation occurring prior to September 1, 1950.''

■ . This argument is based upon the well founded maxim *Volenti Non Fit Injuria* (he who consents to what is done cannot complain of it) and to the general proposition so well set forth by Mr. Gibson in his Suits in Chancery, 4th Edition, Secs. 72 and 577, that generally speaking consent decrees can only be attacked for fraud. They are final if the decree ''violates no law or public policy''. It is said at page 95 of Gibson, supra, Sec. 72, that:

> ''Indeed, the Supreme Court will not look behind a consent to see whether it was reasonable or not, *if it violate no law or public policy.*'' (Emphasis ours.)

A maxim of equal standing to that above quoted is *Ex Pacto Illigito Non Oritur Actio* (no suit can be brought to enforce a contract in violation of law). This exception as noted above in the attack on consent decrees is thus set forth. The suit now before us is such a suit. The portion of the decree attacked is said to be void as contrary to public policy.

> ''It is a general rule that agreements against public policy are illegal and void. * * * An agreement either to do anything which, or not to do anything the omission of which, is in any degree clearly injurious to the

public and an agreement of such a nature that it cannot be carried into execution without reaching beyond the parties and exercising an injurious influence over the community at large are against public policy." 12 Am. Jur., p. 662, Sec. 167.

What is against public policy and a definition covering it in a given case is a broad question and one that may apply to one State and not to another. In considering what is against public policy it is the duty and province of the court, in determining this question, to consider analogous cases involving the same general principle.

Long ago, in considering this question, this Court in *Osborne v. Allen*, 143 Tenn. 343, 352, 226 S.W. 221, 224, adopted with approval a statement from Mr. Pomeroy (Section 935) as follows:

"Contracts made for the purpose of unduly controlling or affecting official conduct of the exercise of legislative, administrative and judicial functions, are plainly opposed to public policy. They strike at the very foundations of government and intend to destroy that confidence in the integrity and discretion of public action which is essential to the preservation of civilized society. The principle is universal and is applied without any reference to the mere outward form and purpose of the alleged transaction."

The problem naturally in the instant case is one of application. In considering the problem, too, it makes no difference whether or not the contract can "be purged of its illegality by the fact that the act of the officials was not harmful, nor by the fact that it was done in good faith". *Osborne v. Allen, supra.* And as the Chancellor says:

■ "Public officials of the class here shown are entitled to apply fees collected during any term of their office to salary deficiencies occurring in prior terms; that is, the fees available for the payment of salaries of such officers under the Anti-Fee Bill are all fees collected by such officer during the term or terms of his office, without reference to the origin or date of creation of the fee or charge. Williams Tennessee Code, Section 10742; *Hunter v. Conner*, 152 Tenn., 258 [277 S.W. 71]; *Hamilton County v. Clerk*, 165 Tenn. 292 [55 S.W.2d 266]; *Anderson v. Maury County*, 193 Tenn. 62 [242 S.W.2d 81]; *Gregory v. Trousdale County*, 193 Tenn. 57 [242 S.W.2d 80]; *Bigger v. Robertson County* [38 Tenn. App. 619], 277 S.W.2d 454.

■ "I am of the opinion that the agreement entered into by the complainant and the Chairman of the County Court of Sumner County, in which it was attempted to change or fix the compensation of complainant as Circuit Court Clerk of said county different from that provided by statute, is against public policy, contrary to the law as interpreted by our highest courts, and void *ab initio. Moore et al. v. White et al.*, 174 Tenn. 32 [122 S.W.2d 451]; *Carmichael v. Hamby*, 188 Tenn. 182 [217 S.W.2d 934]; *Gregory v. Trousdale County*, 194 Tenn. 670 [254 S.W.2d 753]; *Maryland Casualty Company v. State of Texas* [130 Tex. 206], 107 S.W.2d 865; and 118 A.L.R. 1468; *MacMath v. U.S.*, 248 U.S. 151 [39 S.Ct. 31, 63 L.Ed. 177]; *Peterson v. Parsons,* 139 Kan. 701 [33 P.2d 715]; *Winchester v. Azbill*, 225 Ky. 389 [9 S.W.2d 51]; *Grant v. Rochester* [79 App. Div. 460], 80 N.Y.S. 522; and numerous citations of authorities in 118 A.L.R. 1467. It is stated in the last mentioned authority, 'That the rule

in most jurisdictions is that inasmuch as a contract by a public officer or employee to render services for compensation less than that fixed by law is invalid, and recovery of the whole legal compensation may be had.' This statement is supported by citation of authorities of numerous states."

And this:

"In his answer to the petition filed by the Clerk in the Circuit Court seeking authorization for the employment and compensation of a deputy, the then Chairman of the County Court admitted that it was necessary for the Clerk to employ a deputy, and the only real question submitted to the Circuit Judge was the amount of the deputy's salary. * * * Since it appears that the Clerk was entitled to a deputy at said time, and that a salary of $200.00 per month was reasonable compensation, and that the Clerk had the right to apply to the Circuit Judge for authority to employ such deputy, there was nothing done that would in anywise prejudice the rights of the County in said matter. So this fact again places the County in the position of having no consideration to offer the Clerk for the making of the agreement to reduce the latter's salary."

And further:

"The principles of waiver and estoppel are not applicable in this case, and nothing appears to preclude the Complainant from claiming that which is rightfully his under the law—that is, the fees and commissions collected by his office during his tenure of office until the maximum annual salary provided by statute for the Clerks of Circuit Courts in counties of the class

embracing Sumner County has been satisfied, any agreement to the contrary notwithstanding. 'Many recent decisions have held that there was no waiver or estoppel on the part of a public official or employee precluding his recovery of the difference between the salary actually received by him and that to which he was legally entitled notwithstanding an agreement to accept smaller compensation.' Waiver and Estoppel, 114 A.L.R. page 1468; *Crutcher v. Johnson County*, Tex. Civ. App., 79 S.W.2d 932; *Peterson v. Parsons, supra; Winchester v. Azbill*, 225 Ky. 389 [9 S.W.2d 51]; *Grant v. Rochester, supra; Moore et al. v. White et al., supra; Draper v. Putnam County*, 25 Tenn. App. 269 [156 S.W.2d 348]; *Carmichael v. Hamby, supra;* 15 Tennessee Law Review, page 720; *O'Brien v. Rutherford County* ——Tenn.—— 288 S.W.2d 708.''

■ ■ ''Since the agreement attempted to be made by the Chairman of the County Court with the complainant herein was null and void, for the reasons hereinabove stated, the Circuit Court was without authority to confirm such agreement, and said decree of the Circuit Court to that extent is void. Anything that is void under the law cannot be given validity even by the courts. A void judgment on the face of the record, as in the instant case, is a nullity, and is no judgment at all, and stands as if no judgment at all had been rendered. *Sherrell v. Goodrum*, 22 Tenn. 419; *Holmes v. Eason*, 76 Tenn. [754], 760; *Miller v. Morelock*, 185 Tenn. 466, (470) [206 S.W.2d 427].''

After very carefully reading this record and the authorities cited by respective counsel we feel that for the reasons expressed herein, largely those of the Chancellor, that the decree below must be sustained with costs.